UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bernardo Gabriel B.M., | No. 25-cv-4298 (KMM/EMB) |
| Petitioner, | |
| v. | **ORDER** |
| Pamela Bondi, et al., | |
| Respondents. | |

This matter is before the Court on Petitioner Bernardo Gabriel B.M.'s Emergency Motion for Temporary Restraining Order. (Dkt. 6.) Construing the Motion as one for a preliminary injunction, the Court grants the Motion, issues a preliminary injunction, and orders Petitioner's release during the pendency of this action.

## BACKGROUND

Petitioner is a native and citizen of Ecuador. Petitioner arrived at the United States border on January 1, 2025, where he was inspected by U.S. Customs and Border Protection ("CBP") during an appointment scheduled with CBP One, a mobile application.[1] That same

---

[1] Noncitizens previously used the CBP One App to provide information to CBP, schedule interviews, and seek asylum in the United States. *Coal. for Humane Immigrant Rts. v. Noem*, No. 25-cv-872 (JMC), 2025 WL 2192986, at *8 (D.D.C. Aug. 1, 2025) (citing, *inter alia*, Circumvention of Lawful Pathways, 88 Fed. Reg. 31314, 31317–18 (May 16, 2023)). On January 20, 2025, CBP "announced removal of the scheduling functionality within the CBP One mobile application." U.S. Customs and Border Prot., *CBP Removes Scheduling Functionality in CBP One App* (Jan. 21, 2025), https://www.cbp.gov/newsroom/national-media-release/cbp-removes-scheduling-functionality-cbp-one-app#:~:text=Release%20Date,while%20upholding%20U.S.%20immigration%20laws (last visited Dec. 1, 2025).

day, Petitioner was paroled into the United States and was granted a Form I-94 that authorized his parole until December 31, 2025. He was also served a Notice to Appear ("NTA") for an immigration hearing scheduled for October 7, 2025 at Fort Snelling in Minnesota.

On April 11, 2025, Petitioner received an email ("Notice") stating in full:

> **<u>Notice of Termination of Parole</u>**
>
> It is time for you to leave the United States.
>
> You are currently here because the Department of Homeland Security (DHS) paroled you into the United States for a limited period. Pursuant to 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e), DHS is now exercising its discretion to terminate your parole. Unless it expires sooner, your parole will terminate 7 days from the date of this notice.
>
> If you do not depart the United States *immediately* you will be subject to potential law enforcement actions that will result in your removal from the United States — unless you have otherwise obtained a lawful basis to remain here. Any benefits you receive in the United States connected with your parole — such as work authorization — will also terminate. You will be subject to potential criminal prosecution, civil fines, and penalties, and any other lawful options available to the federal government.
>
> DHS encourages you to leave immediately on your own. You can use the CBP Home mobile app on your phone to make arrangements for your departure. If you are departing the United States via land, you should report your departure once outside the United States via that same app. If you are having trouble reporting your departure via land, visit https://i94.cbp.dhs.gov/home for more information about voluntarily reporting your departure.
>
> Again, DHS is terminating your parole. Do not attempt to remain in the United States - the federal government will find you. Please depart the United States immediately.

(Dkt. 2-4.) The Notice received by Petitioner at his personal email address was sent on Respondent U.S. Department of Homeland Security letterhead and came from the email address NoResponses@cbp.dhs.gov. Petitioner was not named in the Notice, nor were there any specific or individual reasons given for the revocation. It was not signed and not attributed to any government official.

On June 25, 2025, Petitioner filed an asylum application. That application is still pending at the time of this Order and will be considered at an immigration hearing on January 9, 2026.

As required by his NTA, Petitioner attended his scheduled immigration hearing on October 7, 2025 at Fort Snelling. During the hearing, the government moved to dismiss Petitioner's removal proceedings. The immigration judge granted the motion over Petitioner's objection. Following the hearing, Respondent Immigration and Customs Enforcement ("ICE") took Petitioner into custody. Petitioner was not provided a warrant, notice, or a hearing on the issue of his detention, and was originally placed in expedited removal proceedings. On October 10, ICE issued Petitioner a new NTA, clarifying that he was not in expedited removal proceedings. Petitioner alleges he has no criminal history and presents no danger to the community or flight risk. He is currently held at the Freeborn County Jail in Albert Lea, Minnesota.

Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on November 11, 2025 asserting seven grounds for relief. (Dkt. 1.) He filed this Motion two days later on November 13, 2025, seeking, among other things, his immediate release

from custody. (Dkt. 6.) Respondents[2] filed a consolidated Response to both the Petition and the Motion on November 20, 2025. (Dkt. 12.) Petitioner filed a Reply on November 24, 2025. The Court held a hearing on the Motion on November 25, 2025.

## DISCUSSION

While Petitioner asserts multiple grounds for relief, the Court specifically addresses only Count Four of the Petition—that Respondents violated the Immigration & Nationality Act ("INA"), specifically 8 U.S.C. § 1182(d)(5)(A) and its regulation 8 C.F.R. § 212.5(e)(2)(i), in revoking Petitioner's parole—because it is sufficient to grant the injunctive relief sought here.

**A.    Legal Standards**

**1.    Preliminary Injunction**

Under Federal Rule of Civil Procedure 65, a district court has the power to grant injunctive relief by issuing either a temporary restraining order or a preliminary injunction. Courts apply "the same standards to a request for a preliminary injunction and temporary restraining order." *Thompson v. Lakeville Area Schs.*, No. 24-cv-3717 (KMM/TNL), 2024 WL 4441769, at *5 (D. Minn. Oct. 8, 2024) (quoting *Roberson v. Kansas City S. Ry. Co.*, 616 F. Supp. 3d 928, 935 (W.D. Mo. 2022)). Here, the Court treats Petitioner's Motion as one seeking a preliminary injunction because Respondents have received notice of the

---

[2] The Court's use of "Respondents" in the Order only refers to the federal Respondents. Respondent Ryan Shea, Sheriff of Freeborn County, has not made an appearance in this case. Regardless, Petitioner conceded at the November 25 hearing that Sheriff Shea is not Petitioner's custodian for habeas purposes, making his appearance nonessential. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004). And the federal Respondents conceded that they could effectuate an order for Petitioner's release.

Motion, the matter is fully briefed, and the Court held a hearing. *See C.S. McCrosan Const. Inc. v. Minn. Dep't of Transp.*, 946 F. Supp. 2d 851, 857 n.10 (D. Minn. 2013) (treating a motion for TRO or preliminary injunction as a request for the latter because the plaintiff provided notice to all parties and the issues were fully briefed).

When deciding whether to grant a preliminary injunction, the Court considers the following four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Wilbur-Ellis Co., LLC v. Erikson*, 103 F.4th 1352, 1355–56 (8th Cir. 2024) (quoting *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981))). These are commonly referred to as the *Dataphase* factors.

The movant bears the burden to establish the need for a preliminary injunction. *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). However, a district court has "broad discretion in determining whether a preliminary injunction should be issued." *Carlson v. City of Duluth*, 958 F. Supp. 2d 1040, 1057 (D. Minn. 2013); *Lankford v. Shermani*, 451 F.3d 496, 503 (8th Cir. 2006) (same). In applying the *Dataphase* factors, "a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998)).

### 2. Immigration Parole and its Revocation Under the INA

The INA establishes an immigration parole system, whereby the government can permit non-citizens to enter the United States without being legally "admitted." *See Geach v. Chertoff*, 444 F.3d 940, 943 (8th Cir. 2006) ("Aliens who are physically present in the United States pursuant to a grant of parole are not considered 'admitted' for purposes of deportation proceeding eligibility."). This status is only temporary, allowing non-citizens entry while they await the resolution of their immigration proceedings. *See Ali v. Cangemi*, No. 03-cv-3189 (DWF/JSM), 2004 WL 4000530, at *9 (D. Minn. June 1, 2004) ("[T]hrough the parole process, these aliens are granted temporary, unofficial entry into the United States pending resolution of their status."), *eventually vacated and remanded on mootness grounds*, 419 F.3d 722 (8th Cir. 2005).

The INA grants the Secretary of Homeland Security the authority, within certain confines, to both grant and revoke parole, stating:

> The Secretary of Homeland Security may, . . . in [her] discretion parole into the United States temporarily under such conditions as [she] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A) ("the parole statute"). Most important here, to parole a non-citizen into the United States, the Secretary must determine "on a case-by-case basis"

6

whether there are "urgent humanitarian reasons or [a] significant public benefit" in doing so. And to revoke that parole status, the Secretary must determine that those purposes have been served.

The Secretary's parole powers are further refined by 8 C.F.R. § 212.5, specifically when it comes to her ability to revoke parole. The regulation restates much of the parole statute's language while adding additional clarity regarding what is required for parole to be revoked:

> (e) Termination of parole — . . .
>
> > (2)(i) On notice. [If the parolee has not left the country and the parole period has not expired], upon accomplishment of the purpose for which parole was authorized or when in the opinion of [the Secretary or her delegees], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.

8 C.F.R. § 212.5(e)(2)(i). In this way, the regulation elucidates the conditions necessary for the Secretary to revoke parole and how she must go about doing so.

In revoking parole status, Respondents[3] must comply both with the statute and their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954); *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001) ("[T]he *Accardi* doctrine

---

[3] While the power to revoke parole is granted to the Secretary of Homeland Security (and by regulation her delegees), the Court will hereinafter refer to "Respondents" collectively when addressing the possessor of this authority for simplicity.

bars administrative agencies from taking action inconsistent with their internal regulations when it would affect individual rights[.]") (quotation omitted).

**B.     Analysis**

    **1.     Jurisdiction**

At the outset, Respondents argue that in the INA, Congress stripped the Court of jurisdiction to review Petitioner's claim. Respondents cite 8 U.S.C. § 1252(a)(2)(B)(ii) for this proposition. Section § 1252(a)(2)(B)(ii) states:

> (B) Denials of discretionary relief
>
> Notwithstanding any other provision of law (statutory or nonstatutory), including [any habeas provision], . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> . . .
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

Because Congress gave the Secretary of Homeland Security discretion to revoke a noncitizen's parole, Respondents reason, § 1252(a)(2)(B)(ii) precludes review of the decision to revoke Petitioner's parole.

Respondents focus on the wrong "decision or action." Here, Petitioner does not challenge the merits of Respondents' discretionary determination regarding his parole status, and the Court is not weighing in on the discretionary consideration of whether the reasons for Petitioner's parole support continued presence in the United States. Rather,

8

Petitioner is challenging whether Respondents followed the procedures enumerated in the parole statute and 8 C.F.R. § 212.5(e)(2)(i) in revoking it. (*See* Dkt. 16 at 2–3 ("Petitioner is not challenging a discretionary determination made consistent with the law. Rather, Petitioner challenges Respondents utter abandonment of any semblance of compliance with the '*procedure* surrounding the substantive decision' to revoke his parole.") (quoting *Orellana v. Francis*, No. 25-cv-04212 (OEM), 2025 WL 2822640, at *2 (E.D.N.Y. Oct. 3, 2025)).

Whether Respondents complied with mandatory procedures in exercising their discretionary power is not precluded from review by § 1252(a)(2)(B)(ii). As stated by the Eighth Circuit, "even if § 1252(a)(2)(B) otherwise bars review of a discretionary act, [federal courts] have jurisdiction to review a 'predicate legal question that amounts to a nondiscretionary determination underlying the denial of relief.'" *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009) (quoting *Ibrahimi v. Holder*, 566 F.3d 758, 764 (8th Cir. 2009)); *Rajasekaran v. Hazuda*, 815 F.3d 1095, 1099 (8th Cir. 2016) (same); *Reyes-Vasquez v. Ashcroft*, 395 F.3d 903, 906 (8th Cir. 2005) (holding 8 U.S.C. § 1252(a)(2)(B) does not preclude review of "the predicate legal question whether the [agency] properly applied the law to the facts in determining an individual's eligibility to be considered for

the relief") (citations omitted).[4] The same is true regarding review of an agency's compliance with its own regulations, at least where "the rules were intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion." *Rajasekaran*, 815 F.3d at 1099 (quoting *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39 (1970)) (cleaned up).

Under § 1182(d)(5)(A) and Part 212.5(e)(2)(i), those predicate legal questions are: (1) whether a determination or finding has been made that the purposes of the individual's parole have been accomplished or that there no longer exist humanitarian reasons or any public benefit justifying the continued presence of the person in the United States; and (2) whether the government has provided written notice of the determination to the parolee. While § 1252(a)(2)(B)(ii) precludes judicial review of a discretionary determination that a non-citizen's parole ought to be revoked, Respondents nonetheless must comply with the requirements of the governing statute and regulation before doing so. Because Petitioner challenges whether these conditions were adhered to in revoking his parole status, judicial review of his Petition is not precluded by § 1252(a)(2)(B)(ii). *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1136–41 (D. Or. 2025); *Orellana*, 2025 WL 2402780, at *3–4 (E.D.N.Y.

---

[4] The consensus of circuit courts is that § 1252(a)(2)(B)(ii) does not preclude judicial review of questions of law arising from an agency's use of discretionary power. *See, e.g.*, *Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015) ("Although the statute strips jurisdiction over a substantive discretionary decision, section 1252 does not strip jurisdiction over procedural challenges."); *Pinho v. Gonzales*, 432 F.3d 193, 204 (3d Cir. 2005); *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 215–16 (5th Cir. 2003); *Morales-Morales v. Ashcroft*, 384 F.3d 418, 423 (7th Cir. 2004); *Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137, 1143–44 (11th Cir. 2009) ("The statute requires us to look at the *particular* decision being made and to ascertain whether *that* decision is one that Congress has designated to be discretionary.").

Aug. 19, 2025), *affirmed on reconsideration in all relevant parts*, 2025 WL 2822640, at *2 (E.D.N.Y. Oct. 3, 2025); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 141–42 (W.D.N.Y. 2025); *Villanueva v. Tate*, No. H-25-cv-3364, 2025 WL 2774610, at *5 (S.D. Tex. Sept. 26, 2025); *cf. Savane v. Francis*, No. 1:25-cv-6666-GHW, 2025 WL 2774452, at *3 n.4 (S.D.N.Y. Sept. 28, 2025).

### 2. *Dataphase* Factors

#### *Likelihood of Success on the Merits*

The Court starts with Petitioner's probability of success on the merits. Courts have stated that "the probability of success factor is the most significant." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342 (8th Cir. 2024) (quoting *Home Instead, Inc.*, 721 F.3d at 497). To demonstrate a likelihood of success on the merits, the moving party must show "a 'fair chance,' not necessarily 'greater than fifty percent,' that it will ultimately prevail under applicable law." *Id.* at 1343 (quoting *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003)); *see Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (a movant "need only show a reasonable probability of success, that is, a 'fair chance of prevailing' on [the claim]") (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)).

Petitioner asserts that the parole statute and 8 C.F.R. § 212.5(e)(2)(i) require Respondents to provide an individualized, case-by-case review in revoking a non-citizen's parole—the same case-by-case assessment the parole statute explicitly requires in granting parole. Petitioner argues that in failing to provide such an individualized determination when terminating Petitioner's parole en masse without an explanation, Respondents

violated the parole statute and its own regulation, and as a result, Petitioner's detention flowing from that revocation is unlawful.[5] Respondents counter that they did not violate the parole statute or the regulation because neither explicitly requires an individualized review in revoking Petitioner's parole. Respondents argue that the language of the parole statute supports this interpretation because Congress omitted the requirement of a "case-by-case" assessment in the statute's clause addressed to termination of parole.

The parties pose an issue of statutory and regulatory interpretation. "[I]n all cases requiring statutory interpretation, the Court must also begin 'by analyzing the statutory or regulatory language.'" *Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC*, No. 09-cv-3037 (SRN/LIB), 2015 WL 3915687, at *19 (D. Minn. June 25, 2015) (quoting *United States v. Smith*, 756 F.3d 1070, 1073 (8th Cir. 2014)) (cleaned up). "Courts interpret statutes by their plain language, read in context and 'as a whole.'" *Eliseo A.A. v. Olson*, No. 25-cv-3381 (JWB/DJF), 2025 WL 2886729, at *3 (D. Minn. Oct. 8, 2025) (quoting *United States v. Ashcraft*, 732 F.3d 860, 862 (8th Cir. 2013)). When determining the meaning of a piece of statutory or regulatory text, "[n]o clause or word should be rendered 'superfluous, void, or insignificant.'" *Id.* (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

It is true that neither the revocation clause in the parole statute nor the regulation explicitly refer to a "case-by-case" or "individualized" assessment. But the statute and the regulation nevertheless impose specific procedural requirements on the Respondents. The

---

[5] Counsel for Respondents conceded at the November 25 hearing that he was aware of no basis for Petitioner's current detention other than the revocation of his parole. Based on this statement, the Court understands the parole revocation to be the sole reason Petitioner is in custody.

question in this case is whether Petitioner has shown a fair chance of success on his claim that Respondents failed to comply with those procedures, and the Court finds that he has.

In revoking Petitioner's parole, the parole statute and Part 212.5(e)(2)(i) required Respondents to determine that the purpose on which Petitioner was paroled into the United States for had been "served" (whether that was a specific purpose for his entry or, if not, because "neither humanitarian reasons nor public benefit warrants [his] continued presence" in the United States).[6] The Notice is the only piece of evidence in the record reflecting the termination of Petitioner's parole. It neither discusses nor mentions the fulfillment of the purpose of the parole granted here. The Notice states only "Pursuant to 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e), DHS is now exercising its discretion to terminate your parole." (Dkt. 2-4 at 1.) It provides no explanation of why the parole was revoked. And Respondents do not point to any additional documentation indicating that such a determination was made, nor do they provide any affidavit attesting to that fact. The most reasonable (perhaps the *only* reasonable) inference is that Respondents simply implemented a mass termination of parole without any assessment that the purpose of Petitioner's parole has been served or that there are no longer humanitarian reasons or any public benefit supporting his continued presence. Without any suggestion that such a determination occurred, Respondents could not have complied with § 1182(d)(5)(A) and

---

[6] In addition, 8 C.F.R. § 212.5(e)(2)(ii) required Respondents to serve written notice of the revocation on Petitioner. The record is clear that CBP emailed Petitioner in April, but that Notice undermines Respondents' suggestion that they complied with the requirements of the regulation.

13

Part 212.5(e)(2)(i) in revoking Petitioner's parole. This means that the revocation, and, as counsel for Respondents conceded at the hearing, Petitioner's detention, is unlawful.

Relying on *Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025), Respondents argue that no determination was necessary to revoke Petitioner's parole. In *Doe*, the First Circuit considered, as relevant here, the specific issue of if § 1182(d)(5)(A) required the government to revoke parole on a case-by-case basis, concluding that it did not. *Id.* at 285–87. But not merely is *Doe* only persuasive authority in this case, it is distinguishable on multiple grounds. First, unlike here, the government in *Doe* did make a determination that the purpose of the plaintiffs' parole had been accomplished. The plaintiffs, non-citizens who entered into the United States through the Cuba, Haiti, Nicaragua, and Venezuela ("CHNV") parole program, lost parole status when the government, via a lengthy and thorough notice published in the Federal Register,[7] decided to terminate the CHNV program altogether, determining that the program no longer served its implementing purpose. In contrast, for Petitioner's revocation, there is no evidence to suggest that such a determination or other finding was made *at all*, and the evidence in the record strongly suggests it wasn't.

Second, the *Doe* court did not address the regulatory requirements established by 8 C.F.R. § 212.5(e)(2)(i), which implement the parole statute and illuminate the procedural requirements for termination of parole. As analyzed above, Part 212.5(e)(2)(i) not only restates the revocation authority enumerated in § 1182(d)(5)(A), but also clarifies the

---

[7] Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611-01 (Mar. 25, 2025).

(admittedly minimal) procedures the Respondents must follow when invoking the parole statute's revocation authority. The Respondents' failure to follow the governing regulation is equally unlawful. *Accardi*, 347 U.S. at 266–67.

Finally, and perhaps most importantly, the *Doe* court's interpretation of § 1182(d)(5)(A) reads the bulk of the revocation clause out of the statute. That interpretation rests entirely on the fact that the revocation clause does not include the same "case-by-case" language. But such a myopic focus on that omission elides a significant portion of the text of the revocation clause. The revocation clause in the parole statute gives the Secretary of Homeland Security the authority to revoke parole "when the purposes of such parole shall, in the opinion of the Secretary . . ., have been served." If Respondents were not required to make such a determination to effect termination of parole, then there would be no reason for this language to have been included in the statute. This contradicts "one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up). Instead, because the parole statute (and its implementing regulation) require such a preconditional determination to be made, the Court enforces it here.

This outcome is also in line with the virtually unanimous decisions from sister district courts considering parole revocations identical or very similar to the one here. *Y-Z-L-H*, 792 F. Supp. 3d at 1144–46; *Orellana*, 2025 WL 2402780, at *5–7, *affirmed on reconsideration in all relevant parts*, 2025 WL 2822640, at *2–3; *Mata Velasquez*, 794 F. Supp. 3d at 144–46; *Savane*, 2025 WL 2774452, at *8; *Salazar v. Casey*, No. 25-cv-2784

15

JLS (VET), 2025 WL 3063629, at *5–6 (S.D. Cal. Nov. 3, 2025); *Noori v. Larose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *13 (S.D. Cal. Oct. 1, 2025).

Ultimately, what the requirements of 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i) mean for the granularity of Respondents' parole revocation decisions is not for the Court to say here. However, Respondents must follow the law when they make such decisions. Because they have not here, Petitioner is likely to succeed on the merits of his Petition. This factor weighs in Petitioner's favor.

### *Irreparable Harm*

The Court next considers whether Petitioner is threatened by irreparable harm. "A party seeking relief must demonstrate that the injury is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 921 (D. Minn. 2016) (citing *Packard Elevator v. Interstate Comm. Comm'n*, 782 F. 2d 112, 115 (8th Cir. 1986)). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Kato Eng'g, Inc. v. Hanley*, 367 F. Supp. 3d 918, 923 (D. Minn. 2018) (citing *Rogers Gr., Inc. v. City of Fayetteville*, 629 F.3d 784, 789 (8th Cir. 2010)). A loss of liberty from unlawful detention "is perhaps the best example of irreparable harm[.]" *Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018). Petitioner's detention demonstrates he has and continues to suffer irreparable harm. *See Francisco T. v. Bondi*, No. 25-cv-03219 (JMB/DTS), 2025 WL 2629839, at *4 (D. Minn. Aug. 29, 2025) ("[B]y virtue of Petitioner's ongoing loss of liberty, he has demonstrated significant irreparable harm."). This factor weighs in Petitioner's favor.

### *Balance of Harms and the Public Interest*

Finally, the Court weighs the balance of harms and the public interest. While typically considered separately, these two factors "merge when the Government is the party opposing the preliminary injunction." *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1018 (8th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "The goal is to assess the harm the movant would suffer absent an injunction, as well as the harm other interested parties and the public would experience if the injunction issued." *Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 875 (D. Minn. 2015) (citing *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 928 (8th Cir. 1994)). Courts also consider whether the preliminary injunction seeks to alter, rather than preserve, the status quo. *See Adventist Health Sys./SunBelt, Inc. v. United States Dep't of Health & Hum. Servs.*, 17 F.4th 793, 806 (8th Cir. 2021); *Lunde v. Helms*, 898 F.2d 1343, 1346 (8th Cir. 1990).

These factors weigh in favor of Petitioner. Petitioner is currently in detention, the archetypal example of a loss of liberty and is facing a significant and ongoing harm. In contrast, the harm to Respondents is at most minor, if not nonexistent. Ordering Petitioner's release does not meaningfully harm Respondents nor impact their ability to continue to enforce their immigration laws. *See Francisco T.*, 2025 WL 2629839, at *4 ("There is no discernable harm that will come to Respondents by granting Petitioner's requested relief, nor would this Court's ruling interfere with ICE's proper enforcement of U.S. immigration laws."). On the contrary, Petitioner's unlawful detention is a matter of great public interest. *See Günaydin v. Trump*, No. 25-cv-01151 (JMB/DLM), 2025 WL 1218301, at *4 (D. Minn.

Apr. 28, 2025) ("Preserving [the petitioner's] access to judicial review and preventing unlawful detention are compelling issues of public importance."); *cf. Archuleta v. Hedrick*, 365 F.3d 644, 648 (8th Cir. 2004) (considering the issue of unlawful detention as one of "substantial public interest[]"); *see also R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) ("The Government cannot suffer harm from an injunction that merely ends an unlawful practice[.]") (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)) (quotation marks omitted). Here, the Court finds that the balance of harms and the public interest support his release pending the outcome of this litigation.[8]

\* \* \*

Because all four requisite factors weigh in Petitioner's favor, the Court issues a preliminary injunction and orders Petitioner's immediate release from detention. Respondents must provide the Court with an update on Petitioner's release no later than 24

---

[8] The Court disagrees with Respondents' suggestion that release would disrupt the status quo here (Dkt. 12 at 22), making Petitioner's request one for a mandatory, as opposed to a prohibitory, injunction. *See Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at \*10–12 (W.D. Wash. Aug. 21, 2025) (finding that a petitioner requesting preliminary injunction requiring release sought prohibitory injunction to preserve the status quo in place prior to unlawful detention); *see also Maldonado v. Olson*, No. 25-cv-3142 (SRN/SGE), 2025 WL 2374411, at \*15 (D. Minn. Aug. 15, 2025) (finding respondents disrupted status quo by invoking automatic stay in violation of petitioner's due process rights to continue unlawful detention); *Minn. Mining & Mfg. Co. v. Meter ex rel. NLRB*, 385 F.2d 265, 273 (8th Cir. 1967) ("The status quo is the last *uncontested* status which preceded the pending controversy.") (emphasis added). However, the Court finds that even if Petitioner's request for release pending the outcome of this litigation constitutes a request for a mandatory injunction, the Court finds that Petitioner has demonstrated that the factors weigh in favor of his release pending a final resolution. *See Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.3d 589, 593 (8th Cir. 1984) (observing that if "the condition of rest . . . will cause irreparable harm, a mandatory preliminary injunction is proper").

18

hours from the time of this Order's docketing. Additionally, the parties are required to meet and confer by January 15, 2026 and thereafter file a joint letter on the status of this action.[9]

### ORDER

Consistent with the foregoing, **IT IS HEREBY ORDERED THAT**:

1. Petitioner Bernardo Gabriel B.M.'s Emergency Motion for Temporary Restraining Order (Dkt. 6) is **GRANTED**;

2. Respondents are preliminarily **ENJOINED** from detaining Petitioner in violation of 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i) and must immediately release Petitioner from custody;

3. Respondents must file an update on Petitioner's release no later than 24 hours from the time of this Order; and

4. The Parties are required to meet and confer by January 15, 2026 and thereafter file a joint letter on the status of this action.


Date: December 1, 2025                    s/Katherine Menendez
                                          Katherine Menendez
                                          United States District Judge

---

[9] Like the Court in *Günaydin*, this Court finds that posting a bond pursuant to Fed. R. Civ. P. 65(c) is not necessary under the circumstances. 2025 WL 1218301, at *4 n.5 (citing *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016)).